Strafford
No. 2000-205

IN RE DIANE R.

July 31, 2001

*Philip T. McLaughlin*, attorney general (*Ann T. Larney*, assistant attorney general, on the brief and orally), for the State.

*Ruth A. Hall*, of Alton, by brief and orally, for the plaintiffs.

## MEMORANDUM OPINION

BRODERICK, J. The plaintiffs, Diane R.'s mother and stepfather, appeal the order of the Superior Court (*Mohl*, J.) dismissing their

appeal for *de novo* review of a June 15, 1999 district court order for long-term foster care. *See* RSA 169-C:28 (Supp. 1999). We affirm.

The record reveals the following facts. In 1993, Diane R. reported to school officials and officials of the division for children, youth and families (DCYF) that her stepfather had sexually abused her. DCYF filed a neglect petition, which alleged that Diane R., who was then seven years old, was "without proper parental care and control necessary for her physical, mental and emotional health [and was] at risk of harm." Thereafter, the parties signed a consent agreement in which Diane R.'s mother, who was represented by counsel, agreed that Diane R. was neglected and that her legal custody with the right of placement should be granted to DCYF. The Somersworth District Court (*Coolidge*, J.) approved the agreement in 1993. The court specifically found that Diane R.'s mother voluntarily entered into the agreement. At the dispositional hearing, the court ordered that: (1) Diane R. remain in her mother's physical custody; (2) legal custody be awarded to DCYF; and (3) no contact be allowed between Diane R. and her stepfather. Following the final dispositional order, Diane R.'s mother and stepfather did not seek *de novo* review in the superior court. *See* RSA 169-C:28 (Supp. 2000).

In the years that followed, the district court reviewed the case numerous times. Although Diane R.'s physical custody changed from her mother to foster homes, DCYF continuously maintained legal custody. The "no contact" order between Diane R. and her stepfather was not changed until 1995, when the court allowed therapeutically supervised visits between the two. At no time prior to the present appeal did Diane R.'s mother seek certiorari review of any of the court's post-final dispositional orders.

In a 1997 order, the district court ordered DCYF to change the case plan from reunification to long-term foster care. Among other findings supporting this change, the court concluded that the mother had not complied with the "no contact" order. The court found that long term foster care was necessary to protect Diane R. Later orders, including one issued on June 15, 1999, stated that "[t]he case plan remain[s] long-term foster care."

On July 13, 1999, the parents filed an appeal in superior court and requested a *de novo* hearing to review the district court's June 15, 1999 order. Citing a lack of statutory authority for such appeals, DCYF filed a motion to dismiss. The trial court found that the plaintiffs had the right to *de novo* review of the final dispositional order, which all parties agree was issued in 1993, but that the statute neither expressly nor by implication allowed for *de novo* review of subsequent orders. Finding no legal support for the

plaintiffs' claim that the case management plan had changed substantially and was, therefore, a new final dispositional order entitling them to *de novo* review, the court dismissed the appeal. This appeal followed.

■ We agree with the trial court that there is no statutory right to *de novo* appeal from post-final dispositional orders issued by the district court. *See* RSA 169-C:28. RSA 169-C:28 provides that *de novo* review "may be taken to the superior court by the child or the child's authorized representative or any party having an interest, including the state, . . . *within 30 days of the final dispositional order*." (Emphasis added.) A "final dispositional order" includes "a dismissal of a petition for abuse or neglect by the district court" and "any ruling or order arising from an administrative hearing held or initiated by any administrative agency . . . *in which a finding of child abuse or neglect is made.*" *Id.* (emphasis added). It does not allow for *de novo* review of post-final dispositional review orders. *See In re Cindy G.*, 124 N.H. 51, 57-59 (1983).

■ The lack of a *de novo* appeal from post-final dispositional review orders does not, however, foreclose all avenues of review. *See id.* at 59-60 (considering treating request for *de novo* review as petition for writ of certiorari). The plaintiffs could have filed a petition for writ of certiorari in either the superior court or the supreme court to contest such orders. *See id.; see also In re Bill F.*, 145 N.H. 267, 271 (2000).

The plaintiffs argue that because they were denied a *de novo* appeal in the superior court from a post-final dispositional review order of the district court, their fundamental liberty interests were not accorded State or federal constitutional due process. After a careful review of the record, we determine that because no substantial change was made by the June 15, 1999 order, we need not address this constitutional issue. In this case, it is not disputed that the final dispositional order was issued in 1993. The plaintiffs sought superior court review of a June 15, 1999 order, which they claim significantly altered Diane R.'s case plan. Our examination of the record, however, reveals that the changes complained of did not occur in June 1999, but in orders dating back at least as far as 1997, when the court ordered "[t]hat DCYF move forward to change the case plan to long term foster care from reunification . . . ."

Accordingly, any petition for a writ of certiorari should have been filed in 1997. Therefore, even if we were to treat the plaintiffs' present appeal as a petition for a writ of certiorari from the 1997 order, it would be untimely. *See Wilson v. Personnel Comm'n*, 117

N.H. 783, 784 (1977) ("Where the legislature has acted to provide an appeal period in a substantively analogous situation, that [thirty-day] period will prove a fair guideline as to what constitutes a reasonable time.").

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.